1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

FERNANDO R.,[1]

12

Plaintiff,

13

v.

14

MARTIN O'MALLEY, Commissioner of
Social Security,[2]

15
16

Defendant.

Case No.: 23cv181-BEN(LR)

**REPORT AND
RECOMMENDATION REGARDING
JOINT MOTION FOR JUDICIAL
REVIEW OF THE FINAL DECISION
OF THE COMMISSIONER OF
SOCIAL SECURITY**

17

**[ECF NO. 18]**

18
19
20

This Report and Recommendation is submitted to the Honorable Roger T. Benitez,

21

United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule

22
23

---

24

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under
42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

25
26

[2]  Plaintiff named Kilolo Kijakazi, who was the Acting Commissioner of Social Security when Plaintiff
filed her Complaint on October 3, 2022, as a Defendant in this action.  (See ECF No. 1 at 1.)  Martin
O'Malley is now the Commissioner of Social Security, and he is automatically substituted as a party
pursuant to Federal Rule of Civil Procedure 25(d).

27
28

1

72.1(c) of the United States District Court for the Southern District of California.  On January 26, 2023, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits.  (ECF No. 1.)

Now pending before the Court is the parties' "Joint Motion for Judicial Review of the Final Decision of the Commissioner of Social Security" ("Joint Motion").  (ECF No. 18 ("J. Mot.").)  For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND

On July 2, 2020, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging disability beginning July 19, 2019.  (ECF No. 8 ("AR")[3] at 67–68; see also ECF No. 1 at 2.)  After his application was denied initially and upon reconsideration, (AR at 113–17, 119–23), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 124–25).  An administrative hearing was held on May 16, 2022.  (Id. at 32–40.)  Plaintiff did not appear at the hearing,[4] but his counsel appeared, and testimony was taken from a vocational expert ("VE").  (Id.)

As reflected in his September 9, 2022 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from July 19, 2019,

---

[3]  "AR" refers to the Administrative Record filed on March 27, 2023.  (ECF No. 8.)  The Court's citations to the AR in this Report and Recommendation are to the page numbers listed on the original document, rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[4]  The ALJ's written decision does not explain why Plaintiff was not present during the administrative hearing and whether any steps were taken to reschedule the hearing.  (See AR at 17–26).

through the date of the decision.  (Id. at 17, 26.)  The ALJ's decision became the final decision of the Commissioner on December 6, 2022, when the Appeals Council denied Plaintiff's request for review.  (Id. at 1–6.)  This timely civil action followed.  (See ECF No. 1.)

## II.  SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 19, 2019, the alleged onset date.  (AR at 20.)  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar spondylosis, left Achilles tendonitis, and osteoarthritis of left ankle.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 21.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform light work as defined in 20 CFR 404.1567(b) except he is unable to climb ladders, ropes, or scaffolds.  He is able to occasionally climb ramps and stairs.  He is able to occasionally balance, stoop, kneel, crouch, and crawl.  He is able to frequently operate foot controls with his left lower extremity.  He must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights.

(Id. at 21–22.)

At step four, the ALJ determined that Plaintiff's "past relevant work [was] not classified during the hearing."[5]  (Id. at 24.)  The ALJ then proceeded to step five of the

---

[5]  During Plaintiff's administrative hearing the ALJ questioned the VE as follows:

> [ALJ]  I know we don't have the benefit of the testimony of the claimant in this case.  I did [sic] through my research in the E section [sic] did see a disability report at

3

sequential evaluation process.  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as assembler (DOT 706.684-022), electronic worker (DOT 726.687-010), and inspector (DOT 559.687-074), the ALJ found that Plaintiff was not disabled.  (Id. at 25–26.)

## III.  DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as the grounds for reversal and remand:

1.  Whether the ALJ properly considered Plaintiff's obesity, (J. Mot. at 2–8); and

2.  Whether the ALJ property considered the third party function report

---

B2E that lists three different jobs.  Based on your review of the E section, are you able to determine past work in this case or is it too difficult for you?

[VE]  Judge, for each of the three occupations that I saw in Exhibit 2E, there is a variety of DOT designations that differ in terms of the strength requirements.  So, without any work history report or any testimony from the claimant, I really cannot properly classify any of the jobs.

[ALJ]  Understood.  And anywhere else in the E section—I'm assuming you couldn't find any ither information that would help you better determine what the past work was?

[VE]  I did not see anything else.

[ALJ]  All right.  Well[,] based on your testimony[,] then I'm not going to have you classify past work.  I will still take your testimony on some hypotheticals as this may hinge on a Step 5 denial[,] but nonetheless[,] I would recognize it's in the Court's best interest that the claimant be present so that we could better classify the past work.

(Id. at 36–37 (emphasis added).)  In his written decision, the ALJ then stated the following with respect to Plaintiff's past relevant work:

The vocational expert testified that she was not able to properly classify the claimant's past relevant work based on the available information in the file without additional information from the claimant.  Because the claimant was not present at the hearing, the undersigned determined that there was insufficient evidence to classify the claimant's past relevant work.

(Id. at 24.)

completed by Plaintiff's friend and caregiver, Martin Rodriguez, (id. at 2; see also id. at 8–14).

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

## V.  DISCUSSION

**A.**  **The ALJ did not Properly Consider Plaintiff's Obesity**

**1.  Parties' arguments**

Plaintiff argues that the ALJ did not properly consider Plaintiff's obesity.  (See J. Mot. at 3–6.)  Plaintiff asserts that his medical records establish that he was obese during the relevant time period, but the ALJ did not discuss Plaintiff's obesity as either a severe or non-severe impairment at step two of the sequential evaluation process.  (See id. at 3–

23cv181-BEN(LR)

4.)  Plaintiff contends that the ALJ did not consider the exacerbating effects of obesity on Plaintiff's severe musculoskeletal impairments of degenerative disk disease of the lumbar spine and osteoarthritis of the left ankle.  (Id. at 4, 6 (citing Social Security Ruling ("SSR") 19-2p, 84 Fed. Reg. 22924-01 (May 20, 2019).)  Plaintiff further argues that the ALJ did not consider the limiting effects of Plaintiff's obesity when assessing Plaintiff's RFC.  (Id. at 4–6.)  Plaintiff maintains that the ALJ's error was not harmless, because the ALJ might have determined a more restrictive RFC and reached a different decision, had he considered Plaintiff's obesity.  (Id. at 6.)

Defendant responds that Plaintiff does not identify any obesity-related limitations beyond those the ALJ assessed in his RFC, and to the extent the ALJ erred by not considering Plaintiff's obesity under the new regulations, the error was harmless.  (See id. at 6–7.)  Defendant maintains that Plaintiff does not identify any evidence showing that obesity limited his function, increased pain, or otherwise caused limitations beyond those listed in his RFC.  (Id. at 7.)  Defendant also contends that in assessing Plaintiff's RFC, the ALJ relied on medical findings that "inherently illustrated Plaintiff's residual functionality with obesity," and properly concluded that Plaintiff was able to perform the reduced range of light exertional work, subject to postural, lower-extremity, and environmental limitations.  (Id.)

Plaintiff replies that the recent agency regulations require adjudicators to properly consider a claimant's obesity while assessing the claimant's RFC.  (Id. at 8 (citing SSR 19-2p, 84 Fed. Reg. 22924-01).)  Plaintiff states that because his medical providers consistently found that his body mass index ("BMI") exceeded 30.00 and diagnosed him with obesity, his obesity is established by objective medical evidence and qualifies as a medically determinable impairment, and the ALJ was required to consider Plaintiff's obesity while assessing RFC.  (J. Mot. at 8.)  Plaintiff further argues that the ALJ did not provide any reasons for not assessing the severity of Plaintiff's obesity at step two of the sequential evaluation process and for excluding the effects of obesity from Plaintiff's RFC.  (Id.)

1    ## 2.  Applicable law

2          At step two of the sequential evaluation process, the Social Security

3    Administration considers the medical severity of the claimant's impairment.  20 C.F.R.

4    § 404.1520(a)(4)(ii).  To establish that a medically determinable impairment is "severe,"

5    the claimant must show that it "significantly limits [her] physical or mental ability to do

6    basic work activities."  20 C.F.R. § 404.1520(c).  "Basic work activities" include physical

7    functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying,

8    or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering

9    simple instructions; use of judgment; responding appropriately to supervision, co-

10   workers, and usual work situations; and dealing with changes in a routine work setting.

11   20 C.F.R. § 404.1522(b).  The inquiry at step two of the sequential evaluation process is a

12   "de minimis screening device" to screen for groundless claims.  Edlund v. Massanari, 253

13   F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as 'a de minimis

14   screening device to dispose of groundless claims.'").  The ALJ must consider the

15   "combined effect of all of the claimant's impairments" on the claimant's ability to

16   function "without regard to whether each [impairment] alone was sufficiently severe."

17   Id. at 1159.

18         Agency ruling SSR 19-2p, which went into effect on May 20, 2019, governs the

19   ALJ's duties when evaluating obesity.[6]  SSR 19-2p, 84 Fed. Reg. at 22924.  The ruling

20   provides that "[o]besity, when established by objective medical evidence (signs,

21   laboratory findings, or both) from an acceptable medical source (AMS), is [a medically

22   determinable impairment] MDI."  Id.  The ruling further provides the following:

23         [p]eople with obesity have a higher risk for other impairments, and the
             effects of obesity combined with other impairments can be greater than the
24           effects of each of the impairments considered separately.  Obesity is not a

25

26   _____

27   [6]  SSR 19-2p "rescinds and replaces SSR 02-1p; Titles II and XVI: Evaluation of Obesity."  SSR 19-2p,
     84 Fed. Reg. at 22924.

28

listed impairment; however, the functional limitations caused by the MDI of obesity, either alone or in combination with another impairment(s), may medically equal a listing.  Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s).

Id. (footnote omitted).

The ruling also states that "[i]n the medical community, obesity is defined as a BMI of 30.0 or higher."  Id. at 22924–25.  "Signs and laboratory findings from an AMS that may establish an MDI of obesity include measured height and weight, measured waist size, and BMI measurements over time."  Id. at 22925.  A "person [is considered] to have an MDI of obesity as long as his or her weight, measured waist size, or BMI shows a consistent pattern of obesity."  Id.

Additionally, the ruling provides that the ALJ "must consider the limiting effects of obesity when assessing a person's RFC."  Id.  The ALJ should "explain how [he or she] reached [the] conclusion on whether obesity causes any limitations."  Id.

**3.  Analysis**

The ALJ found at step two of his sequential evaluation process that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar spondylosis, left Achilles tendonitis, and osteoarthritis of left ankle.  (AR at 20.)  The ALJ further found that Plaintiff's medically determinable impairments of hemorrhoids, hypertension, liver hemangioma, adenomyomatosis of gallbladder, depression, and anxiety caused no more than minimal limitations in his ability to perform basic work activities and were non-severe.  (Id.)  The ALJ then determined that Plaintiff retained the RFC to perform light work, subject to certain postural and environmental limitations.  (Id. at 21–22.)

The ALJ did not discuss Plaintiff's obesity, either as a severe or non-severe impairment at step two of his sequential evaluation process.  (Id. at 21–31.)  In fact, the ALJ did not mention "obesity" in his written decision.  (See id.)  Plaintiff's medical records, however, contain numerous entries from his physicians documenting Plaintiff's

8

height, weight, and BMI, which consistently exceeded 30.00.  See e.g., id. at 698 (BMI of 38.09 on October 16, 2020); id. at 648 (BMI of 36.09 on November 16, 2020); id. at 618 (BMI of 35.00 on January 8, 2021); id. at 593 (BMI of 33.25 on March 24, 2021); id. at 726 (BMI of 33.94 on August 16, 2021); id. at 881, 884 (BMI of 33.94 on September 15, 2021); id. at 744, 746, 854–55, 862, 872 (BMI of 33.73 on December 21, 2021); id. at 866–67 (BMI of 33.73 on December 27, 2021); id. at 858–59 (BMI of 33.73 on January 3, 2022); id. at 848, 851 (BMI of 33.73 on January 19, 2022).)  Further, there are multiple records from the appointments Drs. Yung, Reddy, and Hourani had with Plaintiff listing obesity as an "active" problem.  (See id. at 754–55 (May 15, 2020); id. at 503, 506 (October 19, 2020); id. at 758–59 (December 10, 2020); id. at 560, 563, 619 (January 8, 2021); id. at 556, 558, 611, 614 (February 3, 2021); id. at 544, 547, 598, 600 (February 23, 2021); id. at 532, 534, 594–95 (March 24, 2021); id. at 587, 589 (May 4, 2021); id. at 725–26 (August 16, 2021); id. at 743, 747 (December 21, 2021); id. at 737, 739, 830, 832 (February 24, 2022); id. at 772–73, 811–12 (May 10, 2022).)  Multiple medical records from Drs. Reddy and Yung also document Plaintiff's obesity diagnosis. (See id. at 483–85 (March 31, 2020); id. at 486–87 (May 15, 2020); id. at 633–34 (March 24, 2021).)  Additionally, Plaintiff's medical records contain notes from Dr. Ancona-Young listing "obesity due to excess calories" and "Class 1 obesity," and recommending low salt, low fat, whole plant based diet, and noting that Plaintiff was "counseled on therapeutic lifestyle changes.  (See id. at 623–24 (November 2020); id. at 591, 595 (March 2021); id. at 876, 878–79, 884–85 (September 2021); id. at 852, 855, 860, 863–64, 867, 871, 875 (December 2021); id. at 840, 845–46, 851, 856, 859 (January 2022); id. at 816, 819, 820, 822, 833, 835, 837, 839 (February 2022).)

The record also contains Plaintiff's written reports, as well as detailed notes from his medical care providers listing functional limitations that may be attributed to or exacerbated by obesity.  See e.g., id. at 219–21, 315, 363–65 (containing Plaintiff's statements that he cannot "walk too far," his "heart beats too fast, [he] get[s] shortness of breath," he does not climb stairs and does not lift things often because "it strains [his]

heart," he gets tired "faster than normal," has difficulties sleeping, wears a back brace for lower and middle back support, and every day uses a cane for support and balance when he walks); id. at 531, 534, 543, 547, 554, 558–59, 563, 597, 600, 610, 614, 686, 688 (containing notes from Dr. Yung from October 20, 2020, through March 24, 2021, documenting Plaintiff's reports of severe pain in lower and middle back, which increased with movement); id. at 477–78 (containing notes from Taylor Mollitor, PT dated January 2, 2020, who conducted lumbar spine and sacroiliac evaluation of Plaintiff, and stated that Plaintiff had functional limitations in several areas, including walking, standing, lifting, and "sit to stand").

Notably, the agency's recent ruling, SSR 19-2p, provides that the ALJ "must consider the limiting effects of obesity when assessing a person's RFC," and states that:

> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment.  People with an MDI of obesity may have limitations in the ability to sustain a function over time.  In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.

> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately.  For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone.  We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

SSR 19-2p, 84 Fed. Reg. at 22925–26 (emphases added, footnotes omitted).

In this case, the ALJ's decision is devoid of any indication that he considered Plaintiff's obesity when formulating Plaintiff's RFC.  (See AR at 17–26); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (providing that an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.").  The ALJ determined that

1  Plaintiff had the RFC to perform light work,[7] subject to certain postural and

2  environmental limitations.  (AR at 21–22.)  Although the ALJ's assessed RFC contained

3  several limitations that could be related to obesity, such as no climbing ladders, ropes,

4  and scaffolds, and occasional climbing of ramps, stairs, and balancing; the RFC did not

5  contain any limitations concerning standing, walking, and using assistive devices to

6  ambulate.  (See id.; see also id. at 219–21, 315, 363–65, 477–78.)

7      As such, the ALJ failed to consider Plaintiff's obesity during his sequential

8  evaluation process, and did not develop the record to determine the impact of Plaintiff's

9  obesity on his other conditions, with respect to work-related limitations.  (See id.); see

10  also SSR 19-2p, 84 Fed. Reg. at 22925 (requiring the ALJ to "consider the limiting

11  effects of obesity when assessing a person's RFC," and "explain how [he or she] reached

12  [the] conclusion on whether obesity causes any limitations"); Mayes v. Massanari, 276

13  F.3d 453, 459 (9th Cir. 2001) ("In Social Security cases, the ALJ has a special duty to

14  develop the record fully and fairly and ensure that the claimant's interests are considered,

15  even when the claimant is represented by counsel."); Loeks v. Astrue, Civil No. 09–

16  1435–HA, 2011 WL 198146, at *5 (D. Or. Jan. 18, 2011) (citing Sims v. Apfel, 530 U.S.

17  103, 110–11 (2000)) (providing that the "responsibility to develop the record rests with

18  the ALJ in part because disability hearings are inquisitorial rather than adversarial in

19

20

---

21  [7]  "Light work" is defined as follows:

22      Light work involves lifting no more than 20 pounds at a time with frequent lifting or
23      carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very
         little, a job is in this category when it requires a good deal of walking or standing, or
24       when it involves sitting most of the time with some pushing and pulling of arm or leg
         controls.  To be considered capable of performing a full or wide range of light work, you
25       must have the ability to do substantially all of these activities.  If someone can do light
         work, we determine that he or she can also do sedentary work, unless there are additional
26      limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

27  20 C.F.R. § 404.1567(b) (emphasis added).

28

nature."); SSR 19-2p, 84 Fed. Reg. at 22924 (stating that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source] AMS, is an MDI," and adjudicators "must consider the limiting effects of obesity when assessing a person's RFC."); Diana H. v. Saul, CASE NO. C19-5748-MAT, 2020 WL 2334056, at *2–3 (W.D. Wash. May 11, 2020) (finding that the ALJ erred by failing to consider plaintiff's obesity at step two and beyond of his sequential evaluation process, where "[p]laintiff's obesity, either as a description, diagnosis, problem, or issue relevant to her symptoms and/or care, [wa]s repeatedly mentioned throughout the record, plaintiff "discussed her weight gain at hearing," but "the ALJ did not mention plaintiff's obesity in the decision."); Julie B. v. Acting Comm'r of Soc. Sec., Case No. 3:22-CV-05912, 2023 WL 6876209, at *4–6 (W.D. Wash. Oct. 18, 2023) (finding that the ALJ erred where the ALJ found that plaintiff's obesity was a severe impairment, but "did not include any limitations on plaintiff's ability to walk, stand, sit, or move from a sitting position to a standing position, or push and pull using lower extremities"; concluding that "the ALJ should have clarified the record by asking more questions of plaintiff during the hearing, and by supplementing the record with a consultive expert . . . to follow the guidance of SSR 19-2p."). Accordingly, the ALJ erred by not properly considering Plaintiff's obesity.

### 4. The ALJ's error was not harmless

An error is harmless if it is inconsequential to the ALJ's ultimate nondisability determination. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1007 (9th Cir. 2015) (finding that the ALJ's error was harmless because it was "inconsequential to the ultimate nondisability determination."); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks and citation omitted) ("[H]armless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."). In this case, Plaintiff was not present during his administrative hearing, and the VE was not able to classify Plaintiff's past relevant work. (See AR at 37 (containing the VE's testimony that without any work history report or any

1  testimony from the claimant, [the VE was not able to] properly classify any of the

2  jobs.").)  The ALJ then questioned the VE as follows:

3        [ALJ]  So, I'd like you to assume a hypothetical individual that could
4        do work at a light exertional level.  The individual can occasionally climb
       ramps and stairs, never climb ladders, ropes, scaffolds, occasional balance,
5        stoop, kneel, crouch and crawl.
6             The individual would be limited to frequent operation of foot controls
       with the left lower extremity[,] and the individual must avoid concentrated
7        exposure to hazards such as operational control of moving machinery and
       unprotected heights.  Based on that light RFC with the postural,
8        manipulative and environmental limits[,] would there be any light, unskilled
       jobs that could be done in the national economy with those limits[,] and if
9        so[,] could you give me three?
10            [VE]  Yes.  There would be jobs such as assembler, 706.684-022,
       light, SVP:2, nationwide there are approximately 250,000 of these jobs.  An
11       electronics worker, 726.687-010, light, SVP: 2, nationwide there are
       approximately 225,000 of these jobs.  Inspector, 559.687-074, light, SVP: 2,
12       nationwide there are approximately 275,000 of these jobs.
13            [ALJ]  All right.  And then if I added to hypo 1 that the individual
       would be off task greater than ten percent of the workday, or in the
14       alternative[,] would be absent two or more days a month on a recurring
       basis, if I added either of those limits individually to hypo 1[,] would that
15       preclude all work in your professional opinion?
16            [VE]  In my opinion that person would be unable to maintain any
       competitive work.
17

18

19  (Id. at 38–39.)

20      In his written decision, the ALJ stated that because Plaintiff was not present at the

21  hearing, the ALJ "determined that there was insufficient evidence to classify [Plaintiff's]

22  past relevant work."  (Id. at 24.)  Further, based on the VE's testimony that a hypothetical

23  person with Plaintiff's vocational profile and RFC could perform the requirements of

24  assembler, electronic worker, and inspector jobs available in significant numbers in the

25  national economy, the ALJ determined that Plaintiff was not disabled.  (Id. at 25–26.)

26      The ALJ's written decision does not have any indication that the ALJ considered

27  Plaintiff's obesity, whether deemed a severe or non-severe impairment, and whether

28  considered alone or in combination with other impairments; and the ALJ's assessed RFC

does not include any limitations on standing, walking, or using assistive devices to ambulate.  (See id. at 17–26.)  Based on the record before it, the Court cannot conclude that the ALJ's error was harmless.  See Rounds, 807 F.3d at 1007; Tommasetti, 533 F.3d at 1038; see also Julie B., 2023 WL 6876209, at *6 (finding that the ALJ erred by not properly considering plaintiff's obesity and the error was not harmless, where, *inter alia*, the ALJ's assessed RFC did not contain "limitations concerning standing, walking, going from a seated position to a standing position"); Diana H., 2020 WL 2334056, at *3 (finding reversible error, where, *inter alia*, there was "no indication the ALJ was even aware of plaintiff's obesity, whether deemed a severe impairment or not and whether considered alone or in combination with other impairments"; remanding for "further consideration of plaintiff's impairments beginning at step two, including consideration of [plaintiff's] obesity.").

The Court therefore **RECOMMENDS** that the District Judge find that the ALJ erred by not properly considering Plaintiff's obesity.  The Court further **RECOMMENDS** that the District Judge find that the ALJ's error was not harmless.

## B.   The ALJ did not Properly Consider the Third Party Function Report Completed by Plaintiff's Caregiver and Friend, Martin Rodriguez

### 1.  Parties' arguments

Plaintiff argues that the ALJ failed to properly consider the third party function report from Plaintiff's longtime caregiver and friend, Martin Rodriguez.  (J. Mot. at 8–11, 13–14.)  Plaintiff contends that the ALJ did not mention Mr. Rodriguez or his third party function report in the written decision, and did not articulate what weight, if any, he afforded to Mr. Rodriguez's detailed statements in the report.  (Id. at 9–10.)  Plaintiff further asserts that although an ALJ can reject the testimony of lay witnesses, the ALJ can do so only if he gives reasons germane to each witness whose testimony he rejects.  (Id. at 9.)  Plaintiff also states that although the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in [20 C.F.R. § 404.1520c(d)]," the ALJ is required to "base the decision

on the preponderance of the evidence offered at the hearing or otherwise included in the record," including evidence from "nonmedical sources." (Id. at 9–10 (citing 20 C.F.R. § 404.953(a); 20 C.F.R. § 404.1520c(d).) Plaintiff alleges that by ignoring Mr. Rodriguez's comprehensive written statements in his decision, the ALJ failed to consider all relevant evidence while adjudicating Plaintiff's claim. (J. Mot. at 10.) Additionally, Plaintiff argues that the ALJ's error was not harmless, because Mr. Rodriguez's statements and observations supported far greater limitations than the ALJ's assessed RFC, including limitations on Plaintiff's ability to stand and walk. (Id. at 10–11.)

Defendant contends that Plaintiff fails to establish that a third party lay witness statement necessitates reversal. (Id. at 11–13.) Defendant argues that under the revised regulations, the ALJ was not required to explicitly discuss Mr. Rodriguez's statements, because lay witness testimony falls under the category of evidence from "nonmedical sources." (Id. at 11–12 (citing 20 C.F.R. § 404.1520c(d); 20 C.F.R. §§ 404.1513(a), 404.1513(a)(4); 20 C.F.R. §§ 404.1529(a), 404.1545(a)(3); SSR 16-3p).) Defendant further asserts that although the ALJ is required to "consider" lay witness statements, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in [20 C.F.R. § 404.1520c(d)]." (J. Mot. at 12.) Defendant also states that even if the ALJ erred, the error was harmless because Mr. Rodriguez's statements duplicated Plaintiff's claims. (Id. at 12–13.)

Plaintiff replies that the revised regulations do not eliminate the ALJ's duty to articulate how he considered relevant evidence, such as Mr. Rodriguez' third party function report, regardless of the fact that "an ALJ is not required to evaluate non-medical evidence, such as lay-witness statements, using the factors set forth in 20 C.F.R. § 404.1520c(a)–(c)." (Id. at 13 (citing 20 C.F.R. § 404.1520c(d)).) Plaintiff further contends that his written statements in the record do not duplicate Mr. Rodriguez's lay observations, and asserts that Mr. Rodriguez's statements were "more detailed and concrete than Plaintiff's" statements. (J. Mot. at 14.)

/ / /

### 2.  Applicable law

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c; see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Under the new regulations, lay witness testimony fits under the category of "evidence from nonmedical sources," which the adjudicator is required to "consider."  See 20 C.F.R. §404.1513(a) ("We consider evidence under §§ 404.1520b, 404.1520c"), 404.1513(a)(4) (providing that "evidence from nonmedical sources" is one of the five categories of evidence).  While an ALJ must consider lay witness statements, the revised regulations specify that ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in this section."  20 C.F.R. § 404.1520c(d) (emphasis added).  "An ALJ may disregard lay testimony so long as she 'gives reasons germane to each witness for doing so.'"  Wright v. Saul, 857 F. App'x 380, 382 (9th Cir. 2021); see also Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (citation omitted) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

### 3.  Mr. Rodriguez's third party function report

On April 10, 2021, Plaintiff's caregiver and friend, Martin Rodriguez, completed a third party function report.  (AR at 321–28.)  He stated that Plaintiff cannot stand for a long period of time because of sharp pain in his lower and middle back, as well as pain in his left ankle and foot, and Plaintiff cannot "walk too far or too much."  (Id. at 321.) Mr. Rodriguez reported that Plaintiff was able to "do more things" before; however, now, because of pain, he is not able to move and walk as he used to, gets tired and fatigued, and has difficulties sleeping.  (Id. at 322.)

With respect to Plaintiff's daily activities, Mr. Rodriguez stated that Plaintiff cannot bend his back to put on clothes, and uses a chair to bathe because he cannot stand

for a long time.  (Id. at 323.)  Plaintiff needs help getting out of bed, but can wash his hair and shave when sitting in a chair.  (Id.)  Mr. Rodriguez prepares meals for Plaintiff as Plaintiff cannot stand for a long period of time because of pain in his lower and middle back, and in his left ankle and foot.  (Id.)

Plaintiff cannot do any indoor or outdoor chores because of pain and needs rides to doctors' appointments.  (Id. at 324.)  Mr. Rodriguez accompanies Plaintiff to stores, but Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook.  (Id.)  Plaintiff mostly stays home and spends time on social media and Facebook chatting with family and friends.  (Id. at 324–25.)

Mr. Rodriguez reported that Plaintiff's conditions affect his ability to complete tasks and follow instructions, lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs, as well as his memory, concentration, and understanding.  (Id. at 326.)  Mr. Rodriguez explained that Plaintiff can walk three-to-five minutes, but then needs to rest because of pain.  (Id.)  Plaintiff can pay attention for ten-to-fifteen minutes, follow spoken instructions, but has problems reading because of dyslexia, and does not handle stress well.  (Id. at 326–27.)

Mr. Rodriguez also reported that on a daily basis, Plaintiff uses crutches, a walker, a cane, and a brace/splint, which were prescribed in 2020 and 2021.  (Id.)  Plaintiff takes Metoprolol, Lisinopril, Hydrochlorothiazide, 500 mg Tylenol, and 600 mg Ibuprofen; and the medications cause numerous side effects, including tiredness, drowsiness, anxiety, headaches, dizziness, and nausea.  (Id. at 328.)

### 4.  Analysis

The Court has reviewed the ALJ's written decision and notes that the decision does not contain any discussion of Mr. Rodriguez's third party function report.  (See id. at 17–26.)  The Court has also reviewed the transcript from the May 26, 2022 administrative hearing, and the transcript also does not contain any reference, discussion, or questioning concerning limitations mentioned in Mr. Rodriguez's third party function report with respect to Plaintiff's ability to stand and walk, and need to use assistive devices to

23cv181-BEN(LR)

ambulate.  (See id. at 32–40.)  There is nothing in the record before the Court to suggest that the ALJ in any way considered Mr. Rodriguez's function report and significant limitations on Plaintiff's functional abilities and daily activities that Mr. Rodriguez described in his report.  Further, although Plaintiff's statements in his function report were consistent with the statements in Mr. Rodriguez's third party function report, they were not identical; and Plaintiff's written statements in the record  do not duplicate statements in Mr. Rodriguez's report.  (See id. at 309–16, 321–28; see also id. at 219–21, 224–26, 246, 263, 363–65.)  Notably, because Plaintiff did not appear at his administrative hearing, the ALJ did not have an opportunity to question Plaintiff.  (See id. at 18, 32–40.)  As such, detailed testimony from Plaintiff's long-time caregiver and friend with a firsthand knowledge of Plaintiff's abilities and limitations was especially relevant to the ALJ's determination in this case.  Accordingly, the Court finds that ALJ committed an error by not properly considering Mr. Rodriguez's third party function report.  See 20 C.F.R. § 404.1513(a)(4); 20 C.F.R. § 404.1520c(d); Wright, 856 F. App'x at 382; Diedrich, 874 F.3d at 640.

### 5. The ALJ's error was not harmless

As discussed in section V.A.4, neither the VE nor the ALJ were able to classify Plaintiff's past relevant work.  (AR at 24, 36–37.)  Further, the ALJ did not include many limitations described by Mr. Rodriguez's function report in the hypothetical questions he posed to the VE during the administrative hearing.  (Id. at 38–39.)  Mr. Rodriguez reported that Plaintiff has significant limitations, including difficulty getting out of bed, standing, walking, and that on a daily basis, Plaintiff uses prescribed medical devices, including a cane, walker, crutches, and a brace/splint.  (See id. at 321–22, 326–27.)  Most of the limitations Mr. Rodriguez described in his function report were not incorporated into the ALJ's assessed RFC, most notably, significant limitations on Plaintiff's ability to stand and walk, and Plaintiff's need to use assistive devices to ambulate on a daily basis.  (See id. at 21–22.)

Based on the record in this case, the Court cannot conclude that "no reasonable ALJ, when fully crediting [Mr. Rodriguez's] testimony, could have reached a different disability determination." See Rios v. Saul, Case No.: 19cv704-LL, 2020 WL 71080, at *7 (S.D. Cal. Jan. 7, 2020) (citation omitted) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). As such, the ALJ's error was not harmless. See id.; see also Rounds, 807 F.3d at 1007 (finding that the ALJ's error was harmless because it was "inconsequential to the ultimate nondisability determination."); Tommasetti, 533 F.3d at 1038 (internal quotation marks and citation omitted) ("[H]armless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."); Henry v. Saul, Case No.: 3:19-cv-00890-NLS, 2020 WL 7013588, at *19–21 (S.D. Cal. Nov. 25, 2020) (finding that the ALJ erred by assigning little wight to plaintiff's mother's third party function report, that the ALJ's error was not harmless, and remanding the matter for further proceedings, where it was not clear from the record "whether the ALJ would determine Plaintiff to be disabled or change his RFC determination if the testimony was adopted.").

Accordingly, the Court **RECOMMENDS** that the District Judge find that the ALJ erred by not properly considering Mr. Rodriguez's third party function report. The Court further **RECOMMENDS** that the District Judge find that the ALJ's error was not harmless.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# VI.  REMEDY

Plaintiff moves the Court to reverse the Commissioner's decision and remand the case for further proceedings.  (J. Mot. at 6, 8, 11, 14.)  Defendant asks the Court to affirm the Commissioner's decision, or, in the alternative, "remand Plaintiff's claim to the agency so that the Commissioner may have the opportunity to address any deficiencies."  (Id. at 7, 13–15.)

The reviewing court may enter a judgment "affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  In this case, further administrative proceedings could remedy defects in the ALJ's decision by allowing the ALJ to further develop the record to properly consider Plaintiff's obesity and Mr. Rodriguez's third party function report, reassess Plaintiff's RFC, and determine whether there are any available jobs that Plaintiff can perform.  The Court therefore **RECOMMENDS** that the District Judge find that remand for further proceedings is appropriate.

# VII.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **February 16, 2024**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 23, 2024**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 8, 2024

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

21